UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON MEADOR,<br>    Plaintiff | CIVIL ACTION |
| VERSUS | NO. 19-2378 |
| STARR INDEMNITY & LIABILITY<br>INSURANCE COMPANY,<br>    Defendant | SECTION: "E" (3) |

## ORDER AND REASONS

Before the Court is a Motion to Bifurcate Trial filed by Defendant Starr Indemnity & Liability Company ("Starr").[1] Plaintiff Jason Meador opposes the motion.[2] Starr filed a reply.[3] For the reasons that follow, the motion is **DENIED.**

## BACKGROUND

Plaintiff Jason Meador alleges that on or about June 25, 2018, Plaintiff was operating a truck owned by his employer, Gunite Express, LP ("Gunite"), when "suddenly and without warning" an unknown driver pulled in front of Plaintiff, "causing the vehicle driven by [Plaintiff] to flip and eject [Plaintiff] from the driver's seat."[4] As a result of the alleged incident, Plaintiff suffered various bodily injuries.[5] Plaintiff alleges Starr issued an insurance policy to Gunite providing uninsured/underinsured motorist coverage, which was in full force and effect at the time of the alleged incident.[6] Plaintiff seeks to recover damages from Starr for the injuries he allegedly suffered as a result of the unknown driver's negligence.[7]

---

[1] R. Doc. 38.
[2] R. Doc. 39.
[3] R. Doc. 42.
[4] R. Doc. 1-1 at ¶¶ 4, 8.
[5] *Id.* at ¶ 4.
[6] *Id.* at ¶ 7.
[7] *Id.* at ¶¶ 9-10.

1

On February 20, 2020, Starr filed the instant Motion to Bifurcate Trial.[8] Starr seeks to try the following two issues separately: (1) allegations of liability and quantum; and (2) allegations of bad faith penalties and fees pursuant to Louisiana Revised Statutes § 22:1892 and R.S. § 22:1973.[9]

## **LAW AND ANALYSIS**

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."[10] Contrary to Starr's claim that "[i]n certain cases, it is the norm, not the exception, to separate a plaintiff's bad faith claims from underlying contractual coverage claims,"[11] bifurcation is not the norm, especially in this district. While the decision to bifurcate is left to the discretion of the district court,[12] the Fifth Circuit has provided that "[s]eparation of issues . . . is not the usual course that should be followed."[13] Accordingly, judges in this district have held bifurcated trials "should be the exception, not the rule,"[14] and, as a result, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay,

---

[8] R. Doc. 38.
[9] R. Doc. 38-1 at 1.
[10] Fed. R. Civ. P. 42(b).
[11] R. Doc. 38-1 at 4. Starr points to no cases from this district court to support its claim that bifurcation is "the norm, not the exception." The one Fifth Circuit case Starr cites to support its claim is easily distinguishable, as that case involved the application of Mississippi substantive law, which does not apply in this case. *See O'Malley v. United States Fidelity and Guaranty Co.*, 776 F.2d 494, 500 (5th Cir. 1985) (holding the district court, which was bound to apply Mississippi substantive law, did not abuse its discretion to hear claim of bad faith after determining there was no liability under the insurance policy, explaining that, under Mississippi law, "a recovery on the bad faith claim would not have been possible unless [the plaintiff] prevailed on his coverage claim.").
[12] *See, e.g., Malin Intern. Ship Repair and Drydock, Inc. v. Veolia Es Special Servs., Inc.*, 369 F. App'x 553, 555 (5th Cir. 2010).
[13] *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 304 (5th Cir. 1993).
[14] *Laitram Corp. v. Hewlett–Packard Company*, 791 F. Supp. 113, 114 (E.D. La. 1992).

additional expense, or some other form of prejudice."[15] As the Fifth Circuit has explained, "[t]he issue to be tried must be so distinct and separable from the others that a trial of it alone may be had without injustice."[16] The justification for this high threshold derives, in part, from the Seventh Amendment of the U.S. Constitution. "[I]nherent in the Seventh Amendment guarantee of a trial by jury is the general right of a litigant to have only one jury pass on a common issue of fact."[17] "[I]f separate juries are allowed to pass on issues involving overlapping legal and factual questions the verdicts rendered by each jury could be inconsistent."[18]

In this district, judges routinely deny motions to bifurcate bad faith claims from coverage claims.[19] For instance, in *Robin v. Chartis Property Cas. Co.*, a defendant filed a motion to bifurcate, asking the court to hold two separate trials, one regarding the issue of quantum and one regarding the issue of bad faith penalties and fees.[20] The defendant

---

[15] *Id.* at 115 (quoting *Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989)); *see also Interstate Restoration Group, Inc. v. Al Copeland Investments*, Civ. A. 07–0970, 2009 WL 1870787 (E.D. La. June 25, 2009).
[16] *McDaniel*, 987 F.2d at 305 (quoting *Swofford v. B & W, Inc.*, 336 F.2d 406, 415 (5th Cir. 1964)).
[17] *Id.* (quoting *State of Ala. v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 318 (5th Cir. 1978)).
[18] *Blue Bird Body*, 573 F.2d at 318.
[19] *See, e.g.*, *Plaquemines Parish Law Enforcement Dist. v. RSUI Indemnity Co.*, Civil Action No. 06-11368, 2007 WL 4442350, at *2 (E.D. La. December 17, 2007) (denying defendants' request to bifurcate the issue of coverage liability from plaintiff's bad faith claims because "duplicative trials would unnecessarily burden the Court's already overcrowded docket" and "any potential prejudice to the defendant can be cured by the proper jury instructions"); *Peace Lake Towers, Inc. v. Indian Harbor Ins. Co.*, Civil Action Nos. 06–4522, 06–5136, 2007 WL 925845, at *3 (E.D. La. March 23, 2007) (rejecting a motion to bifurcate the plaintiff's breach of contract and bad faith claims, finding that any prejudice to the insurer "can be cured by appropriate instructions to the jury," and, "[m]oreover, evidence on the coverage issues and [the defendant's] defenses to them is likely to be interwoven to a large extent with the claims handling issues"); *Ferguson v. State Farm Ins. Co.*, Civil Action No. 06-3936, 2007 WL 102127, at *1 (E.D. La. Jan. 1, 2007) (finding that any prejudice to the defendant-insurer did not warrant bifurcation because even "assum[ing] that some prejudice to the defendant may result from the joint trial of the issues of coverage and bad faith denial," "[i]t [is] not this Court's custom to order bifurcation in such insurance cases); *St. Paul Fire & Marine Ins. Co. v. SSF Gulf Terminals, Inc.*, No. Civ.A. 01–3063, 2002 WL 31556351, (E.D. La. Nov. 15, 2002) (denying motion to bifurcate issues of coverage and bad faith denial because doing so would not meet the goals of furthering convenience, avoiding prejudice, or facilitating expedition and economy); *Williams v. Treasure Chest Casino*, Nos. Civ.A. 95–3968, Civ.A. 97–0947, 1998 WL 42586, at *9 (E.D. La. Feb. 3, 1998) (denying motion to bifurcate bad faith claim until disposition of coverage claim because "Although the disposition of [the] bad faith claim is dependant [sic] on the outcome of the coverage issue, bifurcation would not further the interests of judicial efficiency, convenience, and fairness.").
[20] Civil Action No. 13–4807, 2014 WL 1943053, at *2 (E.D. La. May 14, 2014).

"argue[d] that these issues are very different and distinct and, accordingly, involve different documents and witnesses," "claim[ed] that a joint trial on these separate issues would result in prejudice to [the defendant], because evidence of alleged arbitrary and capricious conduct will taint the jury's opinion," "claim[ed] that presentation of evidence on both issues will confuse the jury," "argue[d] that bifurcation would be in the interest of judicial economy," and "[argued] that if the jury finds that Robin is not entitled to any damages, then the issue of [defendant's] alleged bad faith does not have to be tried at all."[21] The district court denied the defendant's motion, explaining:

> The fact that the issues of quantum and bad faith penalties and fees are interwoven only cuts against [defendant's] argument that bifurcation would serve the interest of judicial economy. Because [defendant's] corporate representative will also be called to testify regarding issues of liability and quantum, bifurcation would require this witness to come to court and testify twice. Furthermore, any prejudice to [defendant] would not be enough to warrant separate trials and could be cured by a proper instruction to the jury. This Court is confident that a jury will be able to separate the issues and analyze them as necessary.[22]

In this case, Starr argues it will be prejudiced if the bad faith claims are not bifurcated from the underlying coverage claims because (1) "[a]ny evidence of alleged arbitrary or capricious conduct will taint the jury's opinions, and will render the jury biased with respect to the issues of liability and quantum" and (2) "the admission of evidence regarding alleged bad faith in conjunction with the admission of evidence regarding liability and damages will confuse the jury."[23] Starr argues bifurcation would be in the interest of judicial economy because "[i]f the jury concludes Plaintiff is not owed any sum above what has already been tendered, then the issue of Starr's alleged bad faith does not have to be tried."[24] Starr further argues bifurcation would also be in the interest

---
[21] *Id.*
[22] *Id.*
[23] R. Doc. 38-1 at 5.
[24] *Id.*

4

of judicial economy because "[t]he issues of liability and quantum will be presented by witnesses to the accident, accident reconstruction experts, medical records and testimony regarding the cause and extent of Plaintiff's alleged injuries" whereas "Plaintiff's bad faith claim will be presented by claims file documents, claims handlers, and consideration of whether Starr's actions were reasonable."[25]

> In response, Plaintiff contends:
>
> As a practical matter, information and documents pertaining to liability and damages also relates to bad faith. Defendants claim that they will call different witnesses and use different evidence with respect to each issue. Even if that is true, the issues of liability, damages, and bad faith are too closely related in this case to warrant bifurcation.
>
> . . . Defendant wants to call different witnesses and use different evidence to support its bad faith defense, but that is likely disingenuous. The same witnesses who will testify about the liability and damages in dispute will also testify as to the value of the claims in support of the tenders Defendant has already paid and the method and manner in which the claims were adjusted.[26]

Plaintiff further argues "any prejudice to Defendant that could result from the joint trial of the claims of liability, damages, and bad faith can be cured by appropriate instructions to the jury."[27]

The Court finds it would not promote judicial economy to bifurcate the trial in this case. Even assuming that, as Starr contends, Starr calls no witnesses to testify regarding the bad faith issue, the Court would have to expend time and resources in order to empanel a second jury and hold a second trial only to have various documents admitted at the trial on Plaintiff's bad faith claim.[28] Starr suggests the second trial on Plaintiff's bad

---

[25] *Id.*
[26] R. Doc. 39-1 at 4-5.
[27] *Id.* at 5.
[28] *See Robin*, 2014 WL 1943053 at *2 (finding bifurcation would not promote judicial economy where the plaintiff only planned to call one witness regarding the bad faith claim because "the Court would have to expend time and resources in order to empanel a second jury and hold a second trial only to have one witness testify at that trial.").

5

faith claim will not be necessary because Plaintiff's bad faith claim is "meritless."[29] However, in so arguing, Starr acknowledges that its challenge to Plaintiff's allegation of Starr's bad faith handling of a claim necessitates challenging "fault on the part of the uninsured or underinsured motorist."[30] The fact that the issues of liability and bad faith penalties and fees are interwoven "only cuts against [Starr's] argument that bifurcation would serve the interest of judicial economy."[31] Further, Starr apparently intends to rely on Robert Rucoba's accident reconstruction report to attack both Plaintiff's coverage claims and bad faith claims.[32] This shows the evidence will necessarily pertain to both coverage and bad faith. It would be a waste of time and judicial resources to require the parties to make the same arguments regarding the same evidence in two separate trials. Finally, any prejudice that may arise from adjudicating coverage and bad faith together can be cured by jury instructions.

Starr has failed to carry its burden of proving this is an exceptional case warranting bifurcation under Rule 42.

## **CONCLUSION**

For the foregoing reasons, **IT IS ORDERED** that the Motion to Bifurcate Trial filed by Starr[33] is **DENIED.**

**New Orleans, Louisiana, this 23rd day of March, 2020.**

                                             */s/ Susie Morgan*
                                       **SUSIE MORGAN**
                            **UNITED STATES DISTRICT JUDGE**

---

[29] R. Doc. 42 at 2-3.
[30] *Id.* at 3.
[31] *See Robin*, 2014 WL 1943053 at *2.
[32] R. Doc. 42 at 3.
[33] R. Doc. 38.